May it please the Court, Philip Smith on behalf of Petitioner Carlos Rivas-Gomez. Your Honor, this is another immigration case where really the jurisdiction question and the substantive question come down to the same thing, and that is under Oregon law does a conviction for rape in the third degree, which is a strict liability offense with no knowledge or intent required, does that necessarily come within the ordinary, contemporary, common meaning of the word rape, such that it is an aggravated felony under the immigration law? It sounds like a substantial question, but isn't there an antecedent question as to whether this Court has jurisdiction? Well, I think there's two questions on whether the Court has jurisdiction. One is, is the conviction, is he removable for a conviction for an aggravated felony? And secondly, has he exhausted his administrative remedies as of right? So he has two jurisdictional questions. And if the answer is, to the first question, if the answer is yes, that applying the Supreme Court's Taylor categorical analysis, rape in the third degree under Oregon law is rape and an aggravated felony, then the Court lacks jurisdiction. If the answer is no, it is not, then that is the substantive question presented, but then the Court should also decide, has he exhausted his administrative remedies as of right? If he has not, is there an exception available to him for the exhaustion? Our petitioner's position is he has exhausted his administrative remedies as of right. How? One, in his initial notice of appeal, where the attorney raises the claim that the immigration judge misapplied the law in applying the matter of Jean case to his case. So he didn't directly say, this does not fall within the Taylor categorical analysis. He said the immigration judge, the matter of law, misapplied the matter of Jean case. And the immigration judge decided. Well, be specific or not. I mean, strike directly. You say he didn't directly say. He didn't say, period. He said the immigration judge erred as a matter of law in applying the matter of Jean. In doing what? In applying the attorney general's decision, matter of Jean, to this case. He said nothing at all about the other aspect of it. You're trying to pull that in magnetically, and I don't see how it works. It was inartfully raised, but the court said. Inartfully raised. That's another way lawyers claim that something happened that didn't. If the court should determine that that has not sufficiently raised the claim. Let's assume that. Then petitioner filed a motion to reconsider in which he directly raised the claim to the board. And the purpose of exhaustion is to give the board the first opportunity to consider the issue and to make a record. And in this record is the motion to reconsider and the board's decision. Untimely. The motion to reconsider was actually timely filed, John. But there was not a second petition for review of that motion to reconsider filed with the court. Because? Because the issue, again, is the question of is it an aggravated felony. And that issue was presented to the board. And so petitioner is not asking the court to review the motion to reconsider for an abuse of discretion. What did the board say? The board said it was inappropriate and that as a matter of law they didn't find an error. So the board had an opportunity to review it. And so now the petitioner is this court is jurisdiction is is DeNovo. I'm sorry. We're trying to figure out the procedural pathway before the board. It was not your firm that handled the matter there. And the underlying proceeding. That's correct. Before the board. Before the board, it was not, although it was our firm that did the petition for review. We didn't do the appeal before the board. We did the petition for review with this court. And we filed the motion to reconsider before the board. If the next step, Your Honor, if he did not exhaust, there are exceptions to the exhaustion requirement. And there's a recent case, the recent case, Polyaris Golan, which points out one exception. Now, Polyaris Golan is not directly controlling because the exhaustion statute there was 8 U.S.C. 1326. So it was a criminal proceeding. But the reasoning is persuasive because here the immigration judge told the petitioner he was not eligible to apply for asylum. Because he was convicted of the aggravated felony. And therefore, under Polyaris Golan, he does not, because the immigration judge erroneously informed him of his eligibility to apply for relief. He cannot waive. He cannot knowingly waive his right to appeal that issue. And so he can be excused. Your formulation of the proposition doesn't make sense. If a district court judge tells you something wrong, you don't have to appeal it. And later on you can say, well, the reason I didn't appeal it was because it was wrong. That's why I didn't appeal it. And I'm having trouble following that. In Polyaris Golan, the court said that where the immigration judge erroneously told the individual he was not eligible to apply for relief. A failure to appeal that decision is not a knowing, intelligent waiver of your right to appeal. And so it would be a due process violation. And the individual then, because in Polyaris Golan it was a criminal case and an element of the crime was the validity of the underlying removal order. So it is separate from this case because it's not a criminal case. What is the application? The application is that because the immigration judge told the individual that he was not eligible to apply for asylum. He was an asylee. And if he's been convicted of an aggravated felony, he's not eligible to apply for asylum or to reapply for asylum if he has been convicted of an aggravated felony. And so we're suggesting that that is a, that can excuse any failure to exhaust his administrative remedy. There was, if I might just quickly, the court also directed us to address the Son B. Ashcroft case. The gratuitous, the gratuitous statement by the immigration judge about non-eligibility is more powerful than a ruling to that effect. Because if he had flat out ruled that after the person had raised it, then it wouldn't have the effect of excusing somebody from including it in the petition. So this gratuitous statement is more chilling than the ruling. I'm not sure that it was gratuitous, Your Honor, because the immigration judge is required, is required to inform the individual of any eligibility for relief. So it was a ruling. When he tells him he's not eligible to apply. Well, then wouldn't every ruling be an excuse for not appealing? When it, when the immigration judge categorically tells an individual that they're not eligible for relief, that is, that remains an issue. Yes, whether or not it's exhaustive. All right. We'll hear from the other side. Thank you, Counsel. Thank you. May it please the Court, Your Honors. Leslie McKay for the respondent, John Ashcroft. Your Honors, the posture of this case is confusing. However, it's the government's position that because fundamentally there's an aggravated felony at issue, the analysis really collapses onto the aggravated felony. The exhaustion issue in this case really only serves to define the parameters of the Court's review, insofar as the petitioner has not raised a challenge to the denial of the motion to reconsider by the Board. The only order on review is the underlying merits order. To review that order, the Court must determine whether it has jurisdiction, and to do that, the Court must determine whether the petitioner is removable as an aggravated felon. And because he was convicted of third-degree rape under the Oregon statute, the government argues that, in fact, he was convicted of an aggravated felony, and the Court lacks jurisdiction. And how do we know it's an aggravated felony? We know it's an aggravated felony, Your Honor, because the elements of the Oregon statute are, one, engaging in sexual intercourse, two, with a person under the age of 16. And those elements, under the categorical approach, fit in with the common, ordinary meaning of the term rape, which this Court has said, in Janus de Cito, essentially is sexual intercourse without consent. In this case, obviously there was sexual intercourse, and the victim in this case was 13 years old at the time the event took place. Incapable under the law of consenting. Legally incapable of consenting. Therefore, categorically, this is an aggravated felony, and there's no jurisdiction over the petition for review, and essentially no need to really reach the question of exhaustion or the question of waiver. You're saying that a proposition of law that lack of consent is not an element of the crime is the same as a proposition of law that absence of consent in the real world sense? I'm saying, yes, that legally the inability to consent equates with a lack of consent under the common definition of rape. The fact that she was 13 years old, I think, answers the question on consent. She was legally incapable of consenting. What case do you have that supports your proposition? Your Honor, I think the most relevant case really is Janus de Cito, where the court discusses the common definition of rape. The court can also, if it wants to, look to Pilar Escalon, which you requested that we be prepared to discuss, and contrast the crime in this case against the California annoy or molest a minor statute, which requires no activity or no sexual contact at all. But, Your Honor, I think ultimately this case comes down to, in the cases of this court support, that the common sense definition of rape is sexual intercourse without consent. And all of the conduct covered by the Oregon statute falls within that definition, and therefore this is an aggravated felony. So it's on the basis of this being rape, not of abuse of a minor, that the government is proceeding? Well, Your Honor, if the court wishes to, and the alternative it could find that it's sexual abuse of a minor, the immigration judge specifically found rape, and we believe that it is rape. But it is also clearly sexual abuse of a minor under Barron-Medina and Pereira-Salmaron. Both of those cases support a finding that it's sexual abuse of a minor, clearly. You say it's clearly. I think we would have to pursue the Taylor analysis, would we not? The Taylor analysis, yes, under the categorical approach, which includes merely looking to the elements of this statute, sexual intercourse with a person under the age of 16, to determine whether that falls within sexual abuse of a minor. And I think it's important to note that the court has interpreted the phrase sexual abuse of a minor very broadly. And in Barron-Medina, in fact, said, use of young children as objects of sexual gratification is corrupt, improper, and contrary to good order. It constitutes maltreatment no matter its form. I don't think that there's any way under that definition that it can be said that the petitioner's conviction doesn't fall within that. Unless the court has further questions, I'm happy to submit. Counsel didn't argue it in his oral argument, but do you want to say anything about the point he makes in the brief about the affirmative defense of lack of disparity of age? Your Honor, I don't think the affirmative defense in terms of the age really applies here, because the record reflects, and this isn't, I don't think, stated correctly, possibly in either one of the briefs. The record reflects in the conviction documents and in the police reports, about page 300 of the record, that in this case the alien was 19 years old and the victim was 13 years old. There's a six-year age difference. I don't believe there's any affirmative defense available. Well, but I think the only point he makes is that it takes away from the categorical approach. I don't think it does take away from the categorical approach, because you still just look to the elements of the statute. Thank you. Thank you, Counsel. Go ahead. I'm sorry. I just want to be sure of the government's position on jurisdiction. The government's position is that there's no jurisdiction here because this was an aggravated felony. That is correct. We have jurisdiction to determine our jurisdiction, and when we do that, there's no jurisdiction. That's correct. And you're not pursuing any question of lack of exhaustion. Again, it's my understanding, really, of this record, that the exhaustion issue only helps to define the parameters of review and exclude from consideration the denial of the motion to reconsider. Thank you. Thank you. Your Honors, with regards to the categorical approach to determine whether it's an aggravated felony, it is you look to the full range of conduct under the Oregon revised statute. And, for example, under this statute, a 16-year-old boy could be convicted of statutory rape of a 15-year-old girl. And that type of conduct does not fall within the ordinary, common, contemporary meaning of the word rape. Also, then, at that point, the court would go to a modified categorical approach and look to the records of conviction, not to the police reports, but you would look to evidence in the judgment, the indictment, to determine if there are other facts. And here, the birth date is part of the record of conviction that the court can look to. So the individual was 19 years old at the time. Another reason, though, that this does not fit within the categorical approach is that knowledge is no defense under the Oregon revised statute. So if, for instance, the girl was to represent that she was 18 years old and the individual reasonably believed that she was 18 years old, they could still be convicted under this statute. The other point I wanted to make is there was no factual finding by the immigration judge that this constituted sex abuse of a minor. And so under this court's jurisprudence, the court looks to the factual findings made by the immigration judge, and you wouldn't look to an alternative reason to find that it was an aggravated felony. So we should send it back? Yes, Your Honor. Now, if you determine that the violation of the Oregon statute does not fit within the ordinary, contemporary, common meaning of the word rape, then he's not removable. Thank you, counsel. Go ahead. Sorry. It's just one factual issue, which may not be of any consequence, though it sort of shapes the context. The government referred to the young woman as being 13. Your brief refers to her as being 14. It's my understanding that she was 14 during the time period in the indictment, and I don't think there's any dispute about that. I'm not saying that that changes the application of the state statute, but I think contextually one wonders. Does the government dispute that? Yeah, in page 300 of the record, if you look to the police report, it has her date of birth in May 1987, and the incident, I believe, occurred in December of 2000, or in January of 2001, which would be her age. I see. Thank you, counsel. The case just argued is ordered and submitted, and we're adjourned for the week. All rise. Thank you.
judges: Leavy, Trott, Pollak